### DAWES v. UNITED STATES.

### No. 10862.

United States Court of Appeals
Sixth Circuit.

Oct. 20, 1949.

Allen E. Lockerman, Atlanta, Ga. (Allen E. Lockerman, Atlanta, Ga., on the brief), for appellant.

John A. Fulton, Louisville, Ky. (David C. Walls, and John A. Fulton, Louisville, Ky., on the brief), for appellee.

Before HICKS, Chief Judge, and MARTIN and McALLISTER, Circuit Judges.

PER CURIAM.

Hudspeth and Wyatt were convicted of entering the Calvert Bank in Calvert City, Kentucky, with intent to commit a felony, and carrying away, with intent to steal, money in the sum of $6,531.50 belonging to the bank, an insured institution of the F. D. I. C. Dawes was convicted of aiding, assisting, and abetting them in the felony. All parties were convicted by a jury. Claiming that the evidence was not sufficient to convict him, Dawes appeals.

On August 23, 1946, Hudspeth and Wyatt robbed the bank in Calvert City. They made their getaway in a 1939 black Buick. Appellant Dawes had a sister who lived in Calvert City. About three weeks before the robbery, Dawes was seen in Calvert City driving a 1934 Ford automobile.

Prior to August 23, the date of the crime, Dawes had been living for several days with Hudspeth in the latter's room in Detroit, Michigan. Hudspeth was an automobile worker. McBee, another automobile worker who shared Hudspeth's premises, stated that Hudspeth and Dawes were talking about making a trip to Kentucky in an automobile. At that time, Dawes had an automobile in Detroit. Hudspeth had no car.

On August 22, the day before the robbery, Dawes registered in a hotel in Paducah, Kentucky, under an assumed name, and spent the night there. Hudspeth testified

that he left Detroit on August 22 to go to his home on a farm twenty-six miles from Calvert City, Kentucky. He stated that his route was through Paducah, but that he did not stop there, and arrived at the farm of his family on August 23 at 1 o'clock P.M. According to the testimony of an agent of the Federal Bureau of Investigation, Wyatt's sister stated that Hudspeth and Wyatt had mentioned upon their arrival that they had spent the previous night in Paducah.

On the morning of August 23, the day of the bank robbery, a 1939 black Buick automobile owned by Lee Puryear was stolen on the streets of Paducah, Kentucky. A few days later, it was found by a member of the United States Soil Conservation Service in a field off the road near the Oakland Methodist Church, about nine miles from Calvert City. Fingerprints of Hudspeth were found on this car. Hudspeth and Wyatt were also identified by witnesses as the men who held up the bank and who drove away in the 1939 Buick car after the robbery. The robbery took place shortly after 12:30 P.M. About 11 o'clock in the morning, Lee Story, who was living at Possum Trout, about six miles west of Calvert City, saw a 1939 Buick with three people in it going east toward Calvert City at a speed of about 35 miles an hour.

Calvert City is less than 10 miles from Sharp, Kentucky, where Dawes was born. The Oakland Church is about a mile from Sharp. A witness living near the Oakland Church, shortly after the bank robbery, saw a 1939 black Buick coming fast down the highway, and then saw it turn off up a side road. Two men were in the Buick. A few minutes afterwards, two witnesses saw a 1934 Ford coming out of the road up which the Buick had been driven and proceeding up the highway. There was one man in the Ford and it proceeded toward Paducah. Another witness saw a 1934 Ford about 2 o'clock in the afternoon of the day of the robbery on the road that turns off the Oakland Church road, and stated that the driver of the car looked like Dawes. The identification was, however, very weak. The government contends that this was due to the fact that the witness, after she had given the government this information, learned that Dawes was distantly related to her.

The black Buick was later found deserted near the Oakland Church. The 1934 Ford was seen being driven away from the vicinity where the Buick was found and was proceeding toward Paducah after the robbery.

Several days after the holdup, Hudspeth and Dawes were together again in Detroit. They had purchased new automobiles, paying therefor in large bills. Hudspeth claimed that he had won the money which he used to purchase the car by gambling. Dawes testified that his brother had advanced certain money for the purchase of the car and that he himself had paid an additional amount of $445 in cash out of money that he had in his pocket. It was proved that the brother had drawn a check for $980 on a Detroit bank to help in part payment of the car, and had taken the title in his own name. The cost of the car was $1,425.

When Dawes was arrested, he denied having been in Kentucky for several weeks before the robbery. He wrote his name and address at the request of agents of the Federal Bureau of Investigation, and then expressed his regret that he did so. This sample of his handwriting led to the proof that he had registered under a false name at the hotel in Paducah the night before the robbery. Dawes' explanation as to why he registered under a false name was that he had previously burned a mattress in a hotel by careless handling of a cigarette, and because he had been properly registered, the hotel was able to trace him and make him pay for the damage.

From the foregoing, the government's evidence is to the effect that Dawes and Hudspeth, the convicted robber, were living together in Detroit, a few days before the robbery in Calvert City, Kentucky; that they were both in Paducah, Kentucky, the night before the commission of the crime; that the morning of the holdup, the black 1939 Buick car used in the crime was stolen on the streets of Paducah; that on the same

morning, three men were seen on the highway in a black 1939 Buick between Paducah and Calvert City, about six miles from the latter place, going toward that town; that Hudspeth and Wyatt escaped from the scene of the holdup in a 1939 black Buick car, which was driven to the vicinity of the Oakland Church about nine miles from the bank and there abandoned; that a 1934 Ford car was seen coming from the vicinity of the abandoned car a short time thereafter; and that the driver of the Ford car was somewhat doubtfully identified as appellant Dawes.

There is no evidence, however, that Dawes was with Hudspeth in Paducah or knew that the latter was there the night before the holdup. There is no identification of any of the three men seen in the 1939 Buick going toward Calvert City on the morning of the holdup. With regard on the 1934 Ford car which was seen coming from the vicinity of the abandoned Buick, the identification of the driver as Dawes was weak; and the testimony of those who saw the Ford car coming from the vicinity of the abandoned Buick was to the effect that they saw only one man in the automobile, rather than three. There is no evidence that Dawes was seen in the vicinity of the crime, or in Kentucky, with Hudspeth or Wyatt any time before or after the holdup, although several days later, Hudspeth and Dawes were together in Detroit. Dawes' explanation of his being in Paducah was that he was, at that time, and had been previously, engaged in driving cars between Detroit and Kentucky. Calvert City, where the bank was located, was also the home of his sister; and his own birthplace was near the Oakland Church. Inferences, favorable or unfavorable to Dawes, might be drawn from these circumstances.

Appellant Dawes was convicted on circumstantial evidence, and to sustain a conviction on such evidence, the facts much be such as to exclude every rational hypothesis except that of guilt.

From a consideration of the foregoing and on a review of the record, we are of the opinion that the evidence in this case was insufficient to sustain the conviction of Dawes. The judgment of the district court is, accordingly, set aside and the case remanded to the district court for entry of a judgment in accordance with this opinion.